UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH RODRIGUEZ, o/b/o U.R.R.,

        Plaintiff,        Civil Action No. 14-14170
                              Honorable Nancy G. Edmunds
                              Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 15]

Plaintiff Sarah Rodriguez ("Rodriguez") brings this action on behalf of her minor daughter, U.R.R. ("Plaintiff"),[1] pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [13, 15], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

### I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [15] be DENIED, Plaintiff's Motion for Summary Judgment [13] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of

---

[1] For convenience, the Court will refer to U.R.R, the minor child, as "Plaintiff" throughout this brief, although her mother, Sarah Rodriguez, is the named plaintiff in this action.

benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

## II.     REPORT

### A.     Procedural History

On January 24, 2012, an application for SSI was filed on behalf of Plaintiff, alleging a disability onset date of January 15, 2007. (Tr. 120-28). This application was denied initially on May 15, 2012. (Tr. 78-81). A timely request for an administrative hearing was filed on Plaintiff's behalf, and a hearing was held on June 26, 2013, before ALJ Richard Sasena. (Tr. 42-66). Both Plaintiff and Rodriguez appeared and testified at the hearing, represented by attorney Bethany Versical. (*Id.*). On August 8, 2013, the ALJ issued a written decision finding that Plaintiff is not disabled. (Tr. 21-37). On August 26, 2014, the Appeals Council denied review. (Tr. 1-5). On behalf of Plaintiff, Rodriguez filed for judicial review of the final decision on October 29, 2014. (Doc. #1).

### B.     Background

#### *1.     Disability Reports*

Plaintiff was born in April of 2000, making her eleven years old at the time her application for SSI was filed. (Tr. 47). In an undated disability report, Ms. Rodriguez reported that Plaintiff was 4'9" tall and weighed 185 pounds. (Tr. 144). According to Ms. Rodriguez, Plaintiff suffers from attention deficit hyperactivity disorder ("ADHD"), sleep apnea, and asthma, and first became disabled on January 15, 2007. (Tr. 145). At the time of the report, Plaintiff was in the sixth grade and was taking special education classes. (Tr. 148). According to Ms. Rodriguez, Plaintiff was using a CPAP machine for her sleep apnea and was taking medication for both her mental impairments and her asthma. (Tr. 147). She did not experience any side effects from these medications/treatments. (*Id.*).

In a February 11, 2012 daily activities report, Ms. Rodriguez indicated that Plaintiff dresses herself for school, attends school, watches television, and does her homework on a daily basis. (Tr. 152). When Plaintiff is not in school, she reads, writes, does chores, and watches television. (*Id.*). Ms. Rodriguez indicated that Plaintiff generally gets along well with her friends and adults, but has difficulty "when things don't go her way..." (*Id.*). Apparently, Plaintiff has had "a lot" of verbal confrontations at school, but only one physical confrontation (which resulted in her suspension). (*Id.*). Plaintiff is able to perform chores around the house (such as dusting, sweeping, vacuuming, and mopping). (Tr. 154).

2. *The June 26, 2013 Hearing Before the ALJ*

By the time of the administrative hearing, Plaintiff was thirteen years old and had just finished the seventh grade. (Tr. 46). She testified that she performs chores at home, including cleaning her room, but said that she sometimes needs to be reminded by her mother. (Tr. 47, 50). She testified that her recent grades were poor – two Es, two Cs, and one D – but said that she gets along well with her teachers. (Tr. 48). Plaintiff indicated that she enjoys singing and dancing, and likes to go walking, watch movies, and talk with her friends. (Tr. 48-49). She has difficulty sleeping at night because her CPAP machine gets "tangled up," and she falls asleep in school almost every day. (Tr. 51-52, 60).

Ms. Rodriguez testified that Plaintiff takes two medications in the morning (Adderall and Prozac), as well as one in the evening (Abilify), but did not believe that these medications caused any side effects. (Tr. 54, 65). Plaintiff also uses a nebulizer and an inhaler on a daily basis to control her asthma. (Tr. 53, 63-64). According to Ms. Rodriguez, Plaintiff suffers from mood swings and depression and has low self-esteem (because of her weight problem). (Tr. 57, 63). She misses a lot of school, either because she is feeling tired or depressed. (Tr. 59).

3

			*3.	Medical Evidence, School Records, and Evaluations*

The Court has thoroughly reviewed Plaintiff's medical record, as well as her school records (including teacher questionnaires) and other evaluations. In lieu of summarizing these materials here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

	**C.	Framework for Child Disability Determinations**

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Social Security regulations set forth a sequential three-step process for determining children's disability claims: first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. §416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. "Paragraph A of the listings is a composite of medical findings which are used to substantiate the existence of a disorder," whereas the "purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children." *Id.* Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment does not "meet" a listed impairment, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed

					4

impairment. *See* 20 C.F.R. §416.926a. "Medical equivalency is covered by 20 C.F.R. §416.926; functional equivalency is covered by Section 416.926a." *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment." *Walls v. Comm'r of Soc. Sec.*, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. §416.926(a)). A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;
>
> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or
>
> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Evans ex rel. DCB v. Comm'r of Soc. Sec.*, 2012 WL 3112415, at *6 (E.D. Mich. Mar. 21, 2012) (quoting *Koepp v. Astrue*, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. §416.926. "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability. If a plaintiff is only able to demonstrate most of the requirements for a Listing or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Evans*, 2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, 2008 WL 1990822, at *4 (N.D.

Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *See* 20 C.F.R. §416.926a(b). Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one of the six domains or "marked" limitations" in two of the six. *See* 20 C.F.R. §416.926a(d). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(3)(i). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(2)(i).

### D.     The ALJ's Findings

At step one, the ALJ found that Plaintiff has never engaged in substantial gainful activity. (Tr. 24). At step two, the ALJ found that Plaintiff has the following severe impairments: asthma, learning disability, dysthymic disorder, post-traumatic stress disorder, obesity, obstructive sleep apnea, and ADHD. (*Id.*). At step three, the ALJ concluded that these impairments do not meet or medically equal a listed impairment. (*Id.*). The ALJ also found that Plaintiff's impairments do not functionally equal any Listing because she has "less than marked" limitations in all six functional domains. (Tr. 30-37).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir.

2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F. Analysis

As set forth above, the ALJ found that Plaintiff has several severe impairments, including asthma, a learning disability, dysthymic disorder, post-traumatic stress disorder, obesity, obstructive sleep apnea, and ADHD. (Tr. 24). He then determined that these impairments do not functionally equal a listing. (Tr. 29-37).

In order to establish functional equivalence, Plaintiff must show marked limitations in two domains of functioning, or an extreme limitation in one domain. *See* 20 C.F.R. §416.926a(d). After reviewing the medical and other record evidence, reports, and hearing testimony, the ALJ found that Plaintiff has "less than marked" limitations in all six functional equivalence domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for herself, and health and physical well-being. (Tr. 29-37). Plaintiff now argues that the ALJ erred in finding that she has less than marked limitations in three domains: attending and completing tasks, caring for herself, and health and physical well-being.[2] (Doc. #13 at 17-23).

The domain of health and physical well-being considers the cumulative physical effects of physical or mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of a child's ability to move about and

---
[2] Plaintiff does not challenge the ALJ's conclusions with respect to the other three domains.

manipulate objects. *See* 20 C.F.R. §416.926a(l). Examples of limited functioning in this domain include generalized symptoms, such as weakness, dizziness, agitation, lethargy, or psychomotor retardation because of any impairment(s); somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, or insomnia); limitations in physical functioning because of treatments (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); exacerbations from an impairment(s) that interferes with physical functioning; or medical fragility requiring intensive medical care to maintain a level of health and physical well-being. *See* 20 C.F.R. §416.926a(l)(4).

In concluding that Plaintiff has a less than marked limitation in the domain of health and physical well-being, the ALJ acknowledged Plaintiff's asthma, but noted that respiratory examinations were generally normal and Plaintiff has not required specialized respiratory care. (Tr. 36-37, 346, 351, 357, 387). The ALJ further noted that, although Plaintiff and her mother testified to the use of an inhaler and nebulizer on a daily basis, the record evidenced treatment for only two asthma exacerbations, one in November 2012 (which was described as mild and secondary to an upper respiratory infection) and one in April 2013 (which was treated with prednisone and did not require hospitalization). (Tr. 26, 347-48, 391-94). The ALJ also cited to a February 2012 report from Plaintiff's sixth-grade teacher, indicating that she participated in gym and recess. (Tr. 26, 168). In the same report, that teacher indicated that she had never seen Plaintiff have an issue with her asthma in the six months she had known her. (Tr. 162, 168).

The bigger issue, from the Court's perspective, is the substantial evidence of Plaintiff's extreme lethargy, which, as the ALJ recognized (Tr. 27-29), appears to have worsened significantly during the 2012-13 school year. Plaintiff argues that, in concluding that she has a

9

less than marked limitation in health and physical well-being, the ALJ failed to give appropriate credence to a May 13, 2013 Teacher Questionnaire completed by Loretta Robinson (Plaintiff's resource room specialist at school), which Plaintiff argues establishes at least a marked limitation in this domain. (Doc. #13 at 22). On that form, asked to describe any medical conditions that interfere with Plaintiff's functioning at school, Ms. Robinson set forth Plaintiff's impairments and then listed the medications she was taking (including Adderall, clonidine, Risperdal, and fluoxetine). (Tr. 438). Ms. Robinson then stated: "These medications cause [Plaintiff] to be very tired and often fall asleep in school." (*Id.*). Plaintiff argues that the ALJ erred in purporting to give "great weight" to Ms. Robinson's opinion, while simultaneously declining to find that her statements about Plaintiff's lethargy evidenced at least marked limitations in certain of the functional domains. (Doc. #13 at 22). The Court finds that the ALJ's analysis and conclusions in this regard are not supported by substantial evidence.

As an initial matter, the Court recognizes that, under the applicable regulations, Ms. Robinson is not an acceptable medical source, and the ALJ has considerable discretion in weighing her opinion. *See* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2, 5 (Aug. 9, 2006) ("The evaluation of an opinion from a 'non-medical source' who has seen the individual in his or her professional capacity depends on the particular facts in each case."). Here, the ALJ complied with SSR 06-03p by considering Ms. Robinson's opinion and explaining that he gave it "great weight" to the extent it was consistent with his other findings. (Tr. 29). *See* SSR 06-03p, 2006 WL 2329939, at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of a case.").

10

The problem, however, is that while purporting to give great weight to Ms. Robinson's opinion, the ALJ unfairly minimized her repeated comments about Plaintiff's lethargy, as well as the other significant evidence of Plaintiff's debilitating fatigue in the record. Indeed, the ALJ acknowledged Ms. Robinson's observation that Plaintiff "appears tired and falls asleep in school," but then stated, "While attributing such to [Plaintiff's] use of medication, Ms. Robinson stated that she has never known the child outside of the use of such medication." (Tr. 29 (citing Tr. 438)). But whether Ms. Robinson has ever known Plaintiff outside of her use of medication is immaterial to the salient question – whether Plaintiff's lethargy evidences a marked or extreme limitation in the relevant domains. The ALJ also appears to have discounted Ms. Robinson's statements about Plaintiff's drowsiness because, while "the claimant and/or the claimant's mother attributed [that condition] to side effects of medication[3] … [the medical records indicated] no significant concerns regarding side effects of medications …."[4] (Tr. 27; *see also* Tr. 36 (noting a "lack of significant complaints of side effects of medications" in Plaintiff's mental health treatment notes)). (Tr. 36). Apparently, then, the ALJ seems to have discounted Plaintiff's lethargy simply because the record does not conclusively establish that this condition is *caused* by her medications.

The Court believes this is inappropriate and agrees with Plaintiff that, "Regardless of whether [her] lethargy is caused by her medications or another medical condition – for example, her sleep apnea or depression – this does not change the fact that the behavior is clearly a problem that is limiting her functioning …." (Doc. #16 at 6). In other words, it is immaterial

---

[3] Actually, Plaintiff, who was merely thirteen years old at the time of the hearing before the ALJ, testified as follows regarding her extreme lethargy: "Q. Okay. Now do your medications help you with that? With the tiredness? A. No." (Tr. 51). And, Plaintiff's mother testified that she did *not* attribute Plaintiff's lethargy to side effects of her medications. (Tr. 54).

[4] However, elsewhere in his decision the ALJ wrote, "Treatment notes are consistent with complaints of … low energy …." (Tr. 26).

11

whether Ms. Robinson is correct that it is Plaintiff's medications (or their side effects) that "cause [her] to be very tired and often fall asleep in school" (Tr. 438); the fact remains that the record is replete with evidence of Plaintiff's ongoing significant lethargy and fatigue, which were noted to greatly impact her ability to function in school (at least during the period of the "decline in the [Plaintiff's] academic progress" noted by the ALJ). (Tr. 27). This suggests at least the possibility of a marked (or even extreme) limitation in the domain of health and physical well-being, which should be more fully considered by the ALJ.

For example, in his decision, the ALJ repeatedly notes that the record "reveals persistent reports of sleeping during class," "a decline in [Plaintiff's] academic progress, with reports of frequent sleeping during class," "excessive sleepiness," "frequent sleeping in class," and "excessive absences and frequent sleeping during school." (Tr. 26, 27, 32, 36). Plaintiff's lethargy is also mentioned throughout Ms. Robinson's Teacher Questionnaire, as she comments in sections unrelated to health and physical well-being that Plaintiff "is often extremely lethargic and often sleeps in class" and that, due to her lethargy, "often times you have to get her attention repeatedly in a conversation."[5] (Tr. 433, 434). Similarly, Plaintiff's seventh grade language arts teacher, Ms. Quince observed that Plaintiff "sleeps frequently in class," and, per her mother, has a "sleeping condition that attributes to her falling asleep a lot or being drowsy." (Tr. 417).

Additionally, Plaintiff argues that the ALJ erred in failing to properly analyze an April 2013 report from school psychologist Erin Stutler. (Doc. #13 at 23-25). It is well-established that an ALJ need not discuss every piece of evidence in his written decision; rather, he need only provide enough explanation to allow the Court to determine whether the decision is supported by substantial evidence. *See, e.g., Kornecky*, 167 F. App'x at 508. In this case, however, where

---

[5] *See infra*, fn. 6.

12

there is other abundant evidence of lethargy impeding Plaintiff's school performance, and even ability to function while there, the Court finds instructive Dr. Stutler's observations that Plaintiff "put her head down" when expected to work independently in class, that her teachers reported she had "become more and more withdrawn in recent months," and that her "health conditions are preventing her from attending school regularly and are hindering her performance in the classroom." (Tr. 407, 408).

Given all of this evidence, the ALJ's finding that Plaintiff has a less than marked limitation in the domain of health and physical well-being is not supported by substantial evidence. Indeed, where the regulations specifically provide that "lethargy" is an example of limited functioning in this domain, *see* 20 C.F.R. §416.926a(l)(4), it certainly appears that Plaintiff's lethargy may interfere "very seriously" with her ability to independently initiate, sustain, or complete activities, and, thus, rise to the level of an extreme limitation.[6] For all of these reasons, remand is required to more fully evaluate the foregoing evidence.[7]

---

[6] Even if Plaintiff's limitation in this domain is found to be only marked (as opposed to extreme), Plaintiff's lethargy – and the fact that she either misses school or falls asleep in school on a regular basis – suggests at least the possibility of marked limitations in other domains as well. Specifically, the regulations provide that examples of limited functioning in the domain of attending and completing tasks include being slow to focus on, or failing to complete, activities of interest; repeatedly becoming sidetracked from activities or frequently interrupting others; and requiring extra supervision to remain engaged in an activity. *See* 20 C.F.R. §416.926a(h)(3). Here, within the domain of attending and completing tasks, Ms. Robinson specifically opined that Plaintiff has a "serious problem" in "focusing long enough to finish assigned activity or task" and "working at reasonable pace/finishing on time." (Tr. 434). She further noted that, "Due to [Plaintiff's] lethargy oftentimes you have to get her attention repeatedly in a conversation." (Tr. 434). Thus, for the same reasons discussed above, on remand, the ALJ should carefully consider the effects of Plaintiff's lethargy in determining her functional limitations in other domains as well.

[7] Plaintiff advances other arguments before this Court, including arguments that the ALJ erred in failing to discuss her Global Assessment of Functioning scores and in failing to consider the assistance she receives in order to function. (Doc. #13 at 23-26). Because the Court is recommending remand other grounds, however, it need not address these arguments.

### III. CONCLUSION

For foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [15] be DENIED, Plaintiff's Motion for Summary Judgment [13] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: January 13, 2016           s/David R. Grand
Ann Arbor, Michigan              DAVID R. GRAND
                                       United States Magistrate Judge

### **NOTICE**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 13, 2016.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager